659 So.2d 394 (1995)
Janet Lee GARVIE, Appellant,
v.
Robert Daly GARVIE, Appellee.
No. 94-03011.
District Court of Appeal of Florida, Second District.
July 19, 1995.
Rehearing Denied August 23, 1995.
Celia Ellen Deifik of Richman, Deifik and Lanier, P.A., Naples, for appellant.
Antonio J. Perez-Benitoa of Faerber, Hissam, Cliff & Perez-Benitoa, Naples, for appellee.
LAZZARA, Judge.
Janet Lee Garvie, the former wife, appeals a final judgment of dissolution of marriage. She argues, and we agree, that the trial court abused its discretion in ordering that the parties have rotating custody of their minor child. Accordingly, we reverse and remand for a new hearing at which the trial court shall determine who is to be the primary residential custodian based on the best interest of the child. We further direct that if the former wife is accorded this designation, the trial court shall revisit the issue of her request to relocate to another state with the child, as well as the issue of child support.
The parties were both high school teachers in Naples, Florida, when they married in 1988, establishing a household with the former wife's two minor children by previous relationships. Their child was born in the fall of that year. The parties separated in October of 1993, and the former wife assumed temporary custody of the child, who *395 was then five years of age, subject to agreedupon visitation with the former husband. The former wife filed a petition for dissolution of marriage in November of 1993, alleging that parental responsibility should be shared, but that it would be in the child's best interest if his primary residence was with her. The former husband responded with a counter-petition, contending that the child's primary residence should be with him. During the pendency of the proceedings, the former wife filed a motion to relocate with the child to Carlisle, Pennsylvania, where she had been offered the position of assistant professor of education at Dickinson College. She alleged that the move would be appropriate under Mize v. Mize, 621 So.2d 417 (Fla. 1993), in which the supreme court directed trial courts to weigh and consider certain factors in deciding whether to allow a custodial parent to relocate with a minor child to another geographical area.
At the final hearing held in June of 1994, the former wife maintained that she should be awarded primary physical residence of the parties' child based on his emotional ties to her and to her children from the prior relationships. The former husband retreated from his earlier position and argued for rotating custody with equal time allotted to both parents. The trial court considered not only the testimony of the parties and their witnesses, but also a psychological evaluation of both parties and the child, as well as the report of a guardian-ad-litem. At the conclusion of the hearing, the trial court found on the record that the former wife's petition to relocate with the child did not satisfy the requirements of Mize, and ordered that if she stayed in Naples, the parties would have joint and equal rotating custody, which issue would be revisited when the child enrolled in school.
In July of 1994, the trial court rendered its final judgment of dissolution of marriage. It reiterated its findings under Mize and directed the former wife not to move the child's place of residence outside of Collier County, Florida. The trial court also determined that it was "in the minor child's best interest that the parties share the primary residential parent designation, and that said sharing should be equal." It went on to provide that should the former wife move from Collier County, the former husband would then become the primary residential parent. Prior to the issuance of the final judgment, the former wife had already accepted the position at Dickinson College and, upon her leaving the county, the former husband assumed primary residential custody of the child.
We begin our analysis of the rotating custody issue by noting the "well-settled Florida law that split-custody provisions, such as the one entered below, are strongly disfavored and ordinarily may not be sustained." Bienvenu v. Bienvenu, 380 So.2d 1164, 1165 (Fla. 3d DCA 1980). We recently reaffirmed this long-standing principle by recognizing that "[r]otating custody ... is presumptively not in the best interest of a child." Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995). We noted in Langford, however, the existence of seven factors that could overcome such a presumption:
(1) that the child was older and mature; (2) that the child was not yet in school; (3) that the parents lived near each other; (4) that the child preferred rotating custody; (5) that rotation would not have a disruptive effect on the child; (6) that the periods of time spent with each parent were reasonable; and (7) that the periods of custody were related to divisions in the child's life, such as the school year.
Id. (citations omitted). In the present case, we determine from an analysis of the evidence that none of these factors were sufficiently proven to exist to overcome the presumption against rotating custody.
First, a five-year-old child obviously does not fall within the category concerning age and maturity. Second, although he was not in school at the time of the final judgment, the child was scheduled to start school less than one month later. Third, the former wife was clearly contemplating a move to another state, which she later made. Fourth, there was no evidence suggesting the preference of the child, and, given his age, we seriously question whether he was capable of making such a decision. Fifth, although the record does not establish that rotating custody would have a disruptive effect on the child, it does establish that the *396 parties have a great deal of animosity toward each other and have difficulty conferring on issues affecting the child. Thus, we can reasonably foresee that this mutual antagonism, coupled with this inability to communicate, would have a distressing effect on the child in a rotating custody arrangement. See Bienvenu, 380 So.2d 1164. As to the remaining factors, while the trial court did order equal time with each parent, it was compelled to reserve jurisdiction to modify the time-sharing arrangement in view of the child's upcoming entrance into the school system.
We recognize that the psychological report and the guardian-ad-litem's report both recommended a rotating custody arrangement. We note, however, that the psychologist specifically emphasized that for such an arrangement to be viable, it was essential that both parents live in close proximity, that they communicate effectively, and that they demonstrate some flexibility about the child and his needs. Thus, because it was not clear that the parties could communicate effectively and make cooperative decisions about their child, the psychologist recommended a six-month trial period of joint residential parenting, followed by a re-evaluation to reassess its viability for the family. Furthermore, the guardian-ad-litem's report did not address the issues of close proximity, communication, and flexibility, but merely assumed their existence.
We conclude from this analysis that this state's long-standing presumption against rotating custody was not overcome in this case and, therefore, the trial court erred in ordering such an arrangement. Accordingly, we reverse the trial court's order in that regard and direct that on remand it conduct another hearing to determine the issue of which parent should be designated the primary residential custodian based on the best interest of the child. See Bader v. Bader, 639 So.2d 122 (Fla. 2d DCA) (en banc), review denied, 649 So.2d 232 (Fla. 1994).
As noted, the trial court also denied the former wife's motion to relocate with the child to another state, after determining that she had not satisfied the requirements of Mize, 621 So.2d 417. We do not address the propriety of this ruling because more than one year has elapsed from the final hearing, and we have no way of fairly predicting what effect such a move would have on this young child under present conditions. On remand, therefore, the trial court shall likewise reconsider this issue in light of present conditions in the event the former wife is designated the primary residential custodian and she renews her request to relocate with the child, recognizing, of course, "that where the relocating parent is acting in good faith, permission to relocate should ordinarily be granted; i.e., granting relocation becomes the proverbial rule, rather than the exception." Tremblay v. Tremblay, 638 So.2d 1057, 1059 (Fla. 4th DCA 1994).[1] Finally, should the trial court award primary residential responsibility to the former wife, it must revisit the issue of child support.
Accordingly, for the reasons expressed, we reverse this cause and remand for further proceedings consistent with our opinion.
Reversed and remanded.
RYDER, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] We note that although the Mize test is most commonly used in modification proceedings when the court-designated primary residential custodian seeks to relocate with a minor child, we, as well as the court in Tremblay, have applied it in an original dissolution proceeding. Zak v. Zak, 629 So.2d 187 (Fla. 2d DCA 1993).